IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MELISSA C. CARNES REVOCABLE TRUST DATED FEBRUARY 10, 2010; AND MELISSA CARNES, INDIVIDUALLY AND AS TRSUTEE OF THE MELISSA C. CARNES TRUST,<br><br>      Movants,<br><br>      v.<br><br>CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>      Respondent. | Case No. 22-mc-00203-DDC-TJJ |

## MEMORANDUM AND ORDER

Movants Melissa C. Carnes Revocable Trust, Dated February 10, 2010, and Melissa Carnes, individually and as Trustee of the Melissa C. Carnes Trust, initiated this miscellaneous action and filed a "Motion for Order Pursuant to Customer Challenge Provision of Right to Financial Privacy Act of 1978" (Doc. 1). Under 12 U.S.C. § 3410, movants ask the court to enter an Order preventing the government from accessing certain financial records. They explain that the Consumer Financial Protection Bureau (CFPB) has served subpoenas on five financial institutions seeking records for accounts in the name of the "Melissa C. Carnes Revocable Trust" (MCC Trust), a trust established for the benefit of Melissa Carnes. Movants assert that the Right to Financial Privacy Act (RFPA) applies to MCC Trust's financial records and asks the court to enter an Order precluding the government from accessing these records. For reasons explained below, the court denies the motion.

## I.  Factual and Procedural Background

The following summarizes the factual and procedural background for the movants' pending Motion for Order.

### *Judgment in Related Case Against James Carnes and Integrity Advance*

In a separate but related case, the CFPB filed a Petition under the Consumer Financial Protection Act seeking a judicial order enforcing a Final Order issued by the CFPB against Integrity Advance, LLC and James R. Carnes for violating various federal consumer financial laws.  Petition to Enforce the Bureau's January 11, 2021 Final Order, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. May 19, 2021), ECF No. 1.  The CFPB's Final Order required James Carnes and his company, Integrity Advance, jointly and severally, to pay restitution of $38,453,341.62, and required James Carnes to pay a civil penalty of $5,000,000.  Ex. C to Decl. of Stephen C. Jacques, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. May 19, 2021), ECF No. 2-1 at 67–69.

When James Carnes and Integrity Advance failed to comply with the Order, the CFPB filed its Petition to enforce the Order, which United States District Judge John W. Lungstrum granted on July 30, 2021.  Memorandum and Order, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. July 30, 2021), ECF No. 21 at 2, 4.  The court entered a Judgment (1) requiring Mr. Carnes and Integrity Advance to comply with the CFPB's Final Order of January 11, 2021, and (2) entering a judgment for the CFPB and (a) against James Carnes and Integrity Advance for restitution in the amount of $38,453,341.62, (b) against Integrity Advance in the amount of $7,500,000 for a civil penalty, and (c) against James Carnes in the amount of $5,000,000 for a civil penalty.  Judgment, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. July 30, 2021),

ECF No. 22 at 2, 4.  The CFPB asserts, to date, neither James Carnes nor Integrity Advance has made any payment to satisfy any aspect of the Judgment.

### *The MCC Trust*

The CFPB asserts that it has reason to believe that James Carnes "may have taken steps to conceal and transfer assets from January 2013 to the present, including by using his wife's trust, MCC Trust . . . as a vehicle for shielding the proceeds from his unlawful activity."  Doc. 6-2 at 6 (Cohen Decl. ¶ 17).  The CFPB contends that James Carnes possessed substantial personal wealth during and after he operated Integrity Advance.  But, the CFPB doesn't know where his assets are located now.  The CFPB asserts that, as of October 21, 2021, assets held in Mr. Carnes's name have dwindled substantially.

In January 2013, the CFPB served a civil investigative demand on Integrity Advance, including interrogatories and a request to produce documents.  Decl. of Alusheyi Wheeler ¶ 5, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. Dec. 8, 2021), ECF No. 33-3 at 2.  The CFPB asserts that the civil investigative demand would have placed Mr. Carnes (who was Integrity Advance's CEO) on notice of the CFPB's investigation.

In the related case, Magistrate Judge James P. O'Hara issued an Order granting the CFPB's Motion to Compel James Carnes to produce responses to the CFPB's post-judgment interrogatories and document requests.  Order, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. Feb. 1, 2022), ECF No. 39.  Among other things, Judge O'Hara's Order addressed the CFPB's factual assertions about the relevance of the MCC Trust to Mr. Carnes's assets.  *Id.* at 8–9.  Judge O'Hara explained that the MCC Trust appears to have sold three parcels of real property and, in return, received about $8.7 million.  *Id.* at 8.  Judge O'Hara noted that the MCC Trust currently holds at least two other properties.  *Id.*  Judge O'Hara described how the MCC

Trust entered at least one sales transaction that listed the grantor as "James Carnes, individually and as trustee of the MCC Trust[.]" *Id.* at 9 (internal quotation marks omitted). Also, Judge O'Hara discussed that the MCC Trust purchased a Montana condominium that it may have procured using funds from James Carnes's income and that James Carnes made payments on behalf of the MCC Trust using funds he deposited into a joint account. *Id.* Based on the CFPB's factual assertions about the MCC Trust, Judge O'Hara found that "information concerning the MCC Trust [is] relevant to [James] Carnes' financial condition, including whether he concealed or transferred assets that could otherwise be used to satisfy the court's judgment." *Id.*

Also, the CFPB asserts additional facts about the MCC Trust's relationship to James Carnes's financial condition with its filings in this case. The CFPB contends that the MCC Trust had a money market account with a balance of about $11.2 million as of December 31, 2013 (separate from the $8.7 million in real estate transactions) and that this account made several transfers to LLCs and a trust controlled by James Carnes in 2014. Doc. 6-3 at 2–3 (Bowra Decl. ¶¶ 5–6). Also, the CFPB asserts, the MCC Trust made a loan in December 2020 to a third party LLC controlled by Peter Benz, who later made a loan to James Carnes two days after Judge Lungstrum entered the July 2021 Judgment in the related case. *Id.* at 3 (Bowra Decl. ¶ 7); *see also* Ex. C. to Decl. of Bradley H. Cohen, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. Dec. 8, 2021), ECF No. 33-2 at 39–40, 44 (Carnes's Answers to Interrogatories 10 and 18).

### *Post-Judgment Discovery in the Related Case*

To help collect the Judgment entered by Judge Lungstrum in the related case, the CFPB started propounded discovery in August 2021. Doc. 6-2 at 6 (Cohen Decl. ¶ 17). Specifically, the CFPB sought financial records and information for James Carnes, as well as his wife (Melissa Carnes), his dependents, and trust and corporate entities, including the MCC Trust,

4

beginning from January 1, 2014 to the present. *Id.* at 6–7 n.2 (Cohen Decl. 17–18). After James Carnes failed to comply with the post-judgment discovery requests, the CFPB filed a Motion to Compel, which—as already noted—Judge O'Hara granted. Order, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. Feb. 1, 2022), ECF No. 39. Judge O'Hara specifically ordered James Carnes to respond to the CFPB's discovery seeking information and documents for the entire time period requested, including information about the MCC Trust. *Id.* at 6, 9, 15.

After the CFPB received Mr. Carnes's discovery responses, the CFPB served five subpoenas on five financial institutions under the Federal Debt Collection Procedures Act, 28 U.S.C. § 3015, and Rules 45 and 69 of the Federal Rules of Civil Procedure. Doc. 6-2 at 1–3, 6–7, 8–172 (Cohen Decl. ¶¶ 3–10, 16–18 & Exs. A–E). Each subpoena commands the financial institution to produce: (1) signature cards and other records reflecting the nature of accounts, (2) periodic statements issued since 2013, and (3) checks and similar records of account transactions for the MCC Trust, James Carnes, and twelve other entities, since 2013. *Id.* at 2–3, 8–172 (Cohen Decl. ¶¶ 4–10 & Exs. A–E). The CFPB included with the subpoenas for each financial institution a RFPA certification, explaining that the RFPA does not apply to records for accounts of those who are not "customers" under the RFPA (which, the CFPB asserts, applies to the MCC Trust and the other 12 entities) or James Carnes (because he is a named party in the underlying civil action). *Id.* at 2–3, 8–173 (Cohen Decl. ¶¶ 4–10 & Exs. A–E). Each subpoena required the financial institutions to comply with the subpoenas by April 20, 2022. *Id.* at 8–173 (Cohen Decl. Exs. A–E). The same day that the CFPB served these five subpoenas, the agency also mailed Melissa Carnes a copy of the subpoenas, with a letter describing the nature of the law enforcement inquiry with the notice language set forth in 12 U.S.C. § 3407. *Id.* at 3–4, 173–78 (Cohen Decl. ¶ 11 & Ex. F).

5

On April 13, 2022, movants here filed, as a separate miscellaneous RFPA action, the pending Motion for Order attaching a sworn statement by Melissa Carnes. Doc. 1. On Friday, April 15, 2022, the MCC Trust emailed a file stamped copy of the Motion for Order and the supporting exhibits to CFPB counsel who had served the subpoenas. Doc. 6-2 at 4–5 (Cohen Decl. ¶ 12). The next business day, Monday, April 18, 2022, the CFPB emailed counsel for each recipient of the five subpoenas notifying them of the pending Motion for Order, as well as the motions to quash filed separately by James Carnes and Melissa Carnes and the MCC Trust in the related case. *Id.* at 5 (Cohen Decl. ¶ 13). Each email directed the subpoena recipient as follows: **"[P]lease do not produce any documents in response to the [CFPB's] March 30, 2022 subpoena until you receive further instructions from [CFPB] counsel."** *Id.* (emphasis in original). On Tuesday, April 19, 2022, CFPB counsel learned that one of the five subpoena recipients—Country Club Bank—uploaded ZIP files of responsive documents to the CFPB's Extranet on April 14, 2022. *Id.* (Cohen Decl. ¶ 14). The CFPB attests that it never has unzipped, opened, otherwise processed, or transferred the putatively responsive documents to a place on the CFPB's network that would have made them accessible to any employee in the CFPB's Office of Enforcement, nor has it extracted the data in the ZIP files so that CFPB could review these data. *Id.* The CFPB asserts that it has acted to keep the documents sequestered while the Motion for Order under the RFPA and the motions to quash filed in the related case are pending. *Id.* Other than Country Club Bank, no other subpoena recipient has produced responsive documents. *Id.* (Cohen Decl. ¶ 15).

## II.     Legal Standard

The Right to Financial Privacy Act permits individuals to "contest government access to certain records held by banks and other financial institutions . . . by requiring the government

authority issuing a subpoena for bank records to notify the bank customer of the subpoena served on the financial institution, as well as the nature of the law enforcement inquiry to which the subpoena relates." *Lynch v. U.S. Dep't of Hous. & Urb. Dev.*, No. 09-mc-229-JWL, 2009 WL 4827049, at *2 (D. Kan. Dec. 11, 2009) (citation and internal quotation marks omitted). "The RFPA contains three separate bases for quashing such a subpoena: (1) the agency's inquiry is not a legitimate law enforcement inquiry, (2) the records sought are not relevant to the agency's inquiry, or (3) the agency has not substantially complied with the" RFPA. *Id.*; *see also* 12 U.S.C. § 3410(a)(2) (requiring that a movant under the RFPA state, in part, the "reasons for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry asserted by the Government authority in its notice").

"To oppose disclosure of financial records to a government entity such as [the CFPB], the [opposing] individual must attach to [the] motion an affidavit (1) stating that the individual is a customer of a financial institution from which financial records are being sought and (2) setting forth [the] reasons 'for believing that the financial records sought are not relevant to the legitimate law enforcement inquiry,' as such inquiry is explained by the government in its mandatory notice, or that 'there has not been substantial compliance' with the" RFPA's requirements. *Lynch*, 2009 WL 4827049, at *2 (quoting 12 U.S.C. § 3410(a)). "If the Court concludes that the individual has complied with these requirements, the Court 'shall order the Government authority to file a sworn response.'" *Id.* (quoting 12 U.S.C. § 3410(b)).

In contrast, the court must deny the RFPA challenge if it finds "'a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry.'" *Id.* at *3 (quoting 12 U.S.C. § 3410(c)). So, "in its response, the agency need not establish that the records sought are in fact relevant, but rather

7

must merely demonstrate 'a *reasonable belief* that the records sought are relevant.'" *Id.* (quoting *Matter of SEC Priv. Investigation/Application of John Doe re Certain Subpoenas*, No. M8-85, 1990 WL 119321, at *2 (S.D.N.Y. Aug. 10, 1990)). "'A mere belief is not enough, but a reasonable belief is.'" *Id.* (quoting *Matter of SEC Priv. Investigation*, 1990 WL 119321, at *2).

"The government bears the burden of proving the relevance of the records to the inquiry it is conducting." *Whitburn v. U.S. Dep't of Treasury*, No. 93-MC-139-PFK, 1993 WL 544285, at *1 (D. Kan. Dec. 9, 1993). The standard for relevance is "'quite broad.'" *Lynch*, 2009 WL 4827049, at *3 (quoting *Whitburn*, 1993 WL 544285, at *2). The law enforcement agency need only have a "'good reason to investigate.'" *Id.* (quoting *Matter of SEC Priv. Investigation*, 1990 WL 119321, at *2).

### III.   Analysis

Here, movants have filed a Motion for Order under the RFPA complying with 12 U.S.C. § 3410's statutory requirements to include an affidavit (1) asserting that the MCC Trust is a "customer" of the financial institution from which the CFPB seeks financial records, and (2) providing the reasons that the financial records sought are not relevant to a legitimate law enforcement inquiry as stated by the CFPB's notice, or that the CFPB has not complied substantially with the RFPA's requirements. *See* Doc. 1-3 at 2 (asserting that (1) the MCC Trust "is a customer" of the five financial institutions on whom the CFPB served the subpoenas, and (2) the financial records sought by the CFPB "are not relevant to the legitimate law enforcement inquiry stated in the Customer Notice that was sent to [Melissa Carnes]" or "should not be disclosed because there has not been substantial compliance with the" RFPA).

Once a court determines that an RFPA applicant has satisfied the requirements of § 3410(a), it must order the government to file a response to the motion. 12 U.S.C. § 3410(b).

Here, the court hasn't yet ordered the CFPB to respond to the pending Motion for Order, but the CFPB nonetheless submitted an Opposition to the Motion (Doc. 6) on April 29, 2022. The statute requires the court to complete all proceedings and decide the RFPA motion "within seven calendar days of the filing of the Government's response." 12 U.S.C. § 3410(b). With this May 6, 2022, Order, the court timely decides the RFPA motion. In reaching its decision, the court also has considered movants' Reply, filed on May 5, 2022 (Doc. 7).

The CFPB argues the court should deny movants' Motion for Order under the RFPA for two reasons. *First*, the CFPB asserts that neither Melissa Carnes nor the MCC Trust is a "customer" under the RFPA, and thus movants have no right to invoke the RFPA's procedures. *Second*, the CFPB contends that movants haven't come forward with any reason to quash the subpoenas because the financial records that the subpoenas seek are relevant to a legitimate law enforcement inquiry (*i.e.*, collecting the Judgment against James Carnes and Integrity Advance), and, when issuing the subpoenas, the CFPB complied substantially with the RFPA's requirements. The court addresses each argument, below.

### A. Does the RFPA Apply to Movants?

The CFPB argues that neither movant is a "customer" who can invoke the protections of the RFPA. The RFPA permits only a "customer" to "file a motion to quash" a subpoena issued by a government agency to a financial institution "from which financial records pertaining to [the customer] have been sought[.]" 12 U.S.C. § 3410(a). And, the RFPA requires the court to "deny the motion" to quash if "the court finds that the [movant] is not the customer to whom the financial records sought by the Government authority pertain[.]" *Id.* § 3410(c).

The RFRA defines "customer" as a "person or authorized representative of that person who utilized or is utilizing any service of a financial institution . . . in relation to an account

9

maintained in the person's name[.]" *Id.* § 3401(5). And, the RFPA defines "person" as "an individual or a partnership of five or fewer individuals[.]" *Id.* § 3401(4). The CRFB argues neither the MCC Trust nor Melissa Carnes qualifies as a "customer" under the RFPA's definition.

The CFPB asserts the MCC Trust—as a revocable trust—is not "an individual or partnership[,]" and thus, it's not a "person" entitled to invoke the RFRA's protections. *Id.* § 3401(4), (5). Also, the CFPB cites several cases holding the "RFPA does not apply to . . . trusts." *Lee v. McClellan*, No. 3:97CV355-P, 1997 WL 882907, at *4 (W.D.N.C. Nov. 18, 1997); *see also Chao v. Cmty. Tr. Co.*, 474 F.3d 75, 82–83 (3d Cir. 2007) (declining to "carve out a 'trust exception' to RFPA's definition of 'person' solely on the principles of the common law of trusts" and refusing to "reshape clear statutory language" defining "customer" to apply the RFPA to a trust); *Crypto Traders Mgmt., LLC v. SEC*, No. 1:20-mc-00336-BLW, 2021 WL 665892, at *2 (D. Idaho Feb. 11, 2021) ("A trust is neither an individual nor a partnership and therefore cannot qualify as a 'customer' under the RFPA."). And, the CFPB argues that Melissa Carnes is not a "customer" because she isn't a "person or authorized representative of that person who utilized or is utilizing any service of a financial institution . . . in relation *to an account maintained in the person's name*[.]" 12 U.S.C. § 3401(5) (emphasis added). Here, the accounts at issue are maintained in the name of the MCC Trust—not Melissa Carnes's name. So, the CFPB argues, she isn't a "customer" under the RFRA.

Movants respond that the court should reject the CFPB's arguments that the RFPA doesn't apply to the MCC Trust and Melissa Carnes based on the Notice that it sent to Melissa Carnes on March 30, 2022, informing her about the five subpoenas issued to the five financial institutions and advising her about her right to challenge the subpoenas. Movants argue that the

CFPB previously treated them as "customers" under the RFPA, and they urge the court to prohibit the CFPB from changing its position. But, this argument ignores the Certificate of Compliance that the CFPB included with the subpoenas. They explicitly asserted that the subpoenas were seeking records for accounts of those who are not "customers" under the RFPA (which, the CFPB asserts, applies to the MCC Trust and the other 12 entities) or James Carnes (because he is a named party in the underlying civil action). *See, e.g.*, Doc. 6-2 at 152 (Cohen Decl. Ex. E).

Also, movants argue that the cases declining to apply the RFRA to trusts didn't involve a revocable trust, like the MCC Trust at issue here. Movants assert that Kansas treats revocable trusts as individuals in the debtor/creditor context. Doc. 7 at 4–5 (citing *Redmond v. Kester*, 159 P.3d 1004 (Kan. 2007)). *Kester* held that "a trust beneficiary holds an equitable interest in the property held by the trust." *Id.* at 1009. But *Kester* didn't involve the RFRA, and the court is puzzled why movants believe this Kansas case requires the court to treat a trust as a "customer" under the RFRA.[1] Also, movants argue that Melissa Carnes is a "customer" under the RFRA because the MCC Trust accounts at issue use her social security number. To support this argument, movants cite a case where an Indiana federal court considered whether providing a social security number for an account made a person a "customer" but, ultimately, held that no evidence existed that the financial institution "maintained an account in" the RFPA plaintiff's name, and thus, the court dismissed the RFPA plaintiff's claims for lack of standing. *Lynn v.*

---

[1]   Movants also cite a Colorado federal case where the court addressed the merits of a RFPA challenge brought by a family trust seeking to quash a subpoena that the government issued to an investment firm. *See United States v. Thomas*, 165 F. Supp. 3d 992 (D. Colo. 2015). But, it doesn't appear that any party in that case challenged whether the trust was a "customer" as defined under the RFPA, and the Colorado decision never addressed this specific issue.

*United States*, No. 1:13-cv-00570-WTL-MJD, 2013 WL 6989358, at *1 (S.D. Ind. Nov. 14, 2013).[2]

The court is not particularly persuaded by movant's arguments that they qualify as "customers" under the RFPA such that they have standing to assert their RFPA challenges to the five subpoenas at issue. But, in the end, the court need not decide this issue. That's so, because, even if the court assumes that the RFPA applies to movants, their RFPA challenge fails on the merits. The court explains why in the next subsection.

> **B. Even if the RFPA Applies, Movants Aren't Entitled To Relief Under the RFPA Because the Subpoenas are Relevant to a Legitimate Law Enforcement Inquiry.**

Next, the CFPB asserts, even if the RFPA applies to movants as "customers," they cannot secure relief under the Act because the challenged subpoenas are relevant to a legitimate law enforcement inquiry.[3] Two of the CFPB's arguments sustain this conclusion.

*First*, the CFPB asserts that the subpoenas are for a legitimate law enforcement inquiry—*i.e.*, collecting a judgment against James Carnes. Movants don't dispute "that investigating a judgment debtor's assets is a legitimate law enforcement inquiry." Doc. 7 at 7. Indeed, the RFPA defines "law enforcement inquiry" as "a lawful investigation or official proceeding inquiring into a violation of, or failure to comply with, any criminal or civil statute or any regulation, rule, or order issued pursuant thereto." 12 U.S.C. § 3401(8). The post-judgment

---

[2]   The Indiana court also dismissed the RFPA challenge brought by another plaintiff—the Abigail Paige Lynn Trust—because the RFPA's definition of "person" "unambiguously excludes other legal structures, such as corporations or trusts" so, the court concluded, the Abigail Paige Lynn Trust lacked standing to assert the challenge. *Lynn*, 2013 WL 6989358, at *1.

[3]   The CFPB also has shown that it substantially compiled with the RFPA when issuing the subpoenas. Doc. 6 at 17–19. Movants' Reply doesn't challenge the substantial compliance requirement of 12 U.S.C. § 3410(a).

discovery designed to aid in collection of the Judgment against James Carnes and Integrity Advance qualifies as a "law enforcement inquiry" under this definition.

*Second*, the CFPB argues that the five subpoenas seek documents and information relevant to that legitimate law enforcement inquiry. As already discussed, Judge O'Hara found, based on the CFPB's factual assertions about the MCC Trust, that "information concerning the MCC Trust [is] relevant to [James] Carnes' financial condition, including whether he concealed or transferred assets that could otherwise be used to satisfy the court's judgment." Order, *CFPB v. Integrity Advance, LLC*, No. 21-206 (D. Kan. Feb. 1, 2022), ECF No. 39 at 9. And with this motion, the CFPB has submitted Declarations showing that (1) the MCC Trust transferred funds to judgment debtor James Carnes or that James Carnes made payments on behalf of the MCC Trust, (2) the MCC Trust transferred assets to LLCs and a trust controlled by Carnes in 2014, (3) and the MCC Trust account held significant assets (about $11.2 million) in December 2013. These factual assertions about the financial activity of the MCC Trust demonstrate a "'*reasonable belief*'" that the CFPB's subpoenas seeking financial documents and information about the MCC Trust's financial accounts are relevant to a legitimate law enforcement inquiry. *Lynch*, 2009 WL 4827049, at *3 (quoting *Matter of SEC Priv. Investigation*, 1990 WL 119321, at *2). And, even though neither the MCC Trust nor Melissa Carnes is the target of that legitimate law enforcement inquiry, that "does not defeat the subpoenas" because a "legitimate law enforcement inquiry into a" judgment debtor's "financial condition . . . may extend to the accounts of third parties such as spouses." *United States v. Allen*, No. CR-11-00989-02-PHX-DJH, 2020 WL 1034395, at *4 (D. Ariz. Jan. 31, 2020) (citation omitted).

Movants assert that the court must apply a "more exacting scrutiny" to the disputed subpoenas, citing *In re McVane*, 44 F.3d 1127, 1138 (2d Cir. 1995). Movants argue that this

13

standard applied because the subpoenas "seek personal records of persons who are not themselves targets of the investigation and whose connection to the investigation consists only of their family ties to corporate participants[.]" *Id.* at 1138. *McVane* held that the FDIC has not satisfied the "enhanced scrutiny" applied to subpoenas it had directed to spouses and family members of corporate directors because it had "articulated no grounds for suspecting" that any of the those particular directors had "transferred asserts to family members." *Id.* at 1138–39. In contrast, here, the CFPB has offered more than speculation about fraudulent transfers between the MCC Trust and James Carnes. And, in similar circumstances, courts have declined to apply the "more exacting scrutiny" standard discussed in *McVane*. *See FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997) (holding, where the FDIC alleged that "money may have been transferred to the subpoenaed family members' trusts" and the subpoenas "targeted specific individuals who are implicated by documentary evidence," the "sweeping request problem of *McVane*" didn't exist, and "combined with the highly specific allegations of malfeasance by the targeted Directors . . . the subpoenas satisf[ied] the 'intermediate standard' of scrutiny set forth by *McVane*"); *see also Sharma v. United States*, No. 21-3173 (SDW) (LDW), 2021 WL 7878968, at *4 (D.N.J. July 20, 2021) (holding that *Sharma*'s facts differed from *McVane* because the third-party challenging a summons had made at least three transfers from his financial account to an Indian bank account primarily used to make gifts to his brother—the target of the investigation—so "it cannot be said that his only connection to the investigation is his familial relationship with the target"). For the same reasons addressed in *Garner* and *Sharma*, the court declines to apply a more exacting standard to the subpoenas at issue here.

  As discussed, the CFPB has come forward with specific factual assertions showing that the MCC Trust's connection to the investigation into James Carnes's financial condition (to aid

14

in collecting the Judgment) is not just Melissa Carnes's familial ties with the target—James Carnes.  Instead, the CFPB cites transfers of funds between the MCC Trust and James Carnes, as well as the MCC Trust's transfer of funds to LLCs and a trust controlled by James Carnes.  The CFPB contends that these facts support a reasonable belief that the records sought by the five subpoenas are relevant to James Carnes's financial condition and deciding whether he concealed or transferred assets to avoid paying the Judgment.  The court agrees with the CFPB.  It has satisfied the relevance requirement here.

Also, movants argue that the court already has granted the CFPB "broad latitude" in discovery about the MCC Trust and that James Carnes already has produced "comprehensive information regarding his financial information and transfers."  Doc. 7 at 7.  And, movants argue that the CFPB offers nothing to support its request seeking documents and information going back to January 1, 2013, when the post-judgment discovery in the related case merely sought information beginning in 2014.  *Id.* at 8.  These arguments by movants ignore the standard for relevance which is "'quite broad.'"  *Lynch*, 2009 WL 4827049, at *3 (quoting *Whitburn*, 1993 WL 544285, at *2).  To satisfy the relevance inquiry, the law enforcement agency need only have a "'good reason to investigate.'"  *Id.* (quoting *Matter of SEC Priv. Investigation*, 1990 WL 119321, at *2).  The CFPB has provided the requisite good reason here.  It asserts that the MCC Trust had significant assets in a money market account in 2013 (about $11.2 million), and in the following year, the MCC Trust made several transfers to LLCs and a trust controlled by James Carnes.  Applying the broad relevance standard, the CFPB has provided good reason for seeking documents and information going back to January 1, 2013, based on the assets the MCC Trust controlled during that year and before it began transferring assets to other entities controlled by James Carnes.

In sum, the court finds that the CFPB's law enforcement inquiry "is legitimate" and there is "a reasonable belief that the records sought are relevant to the inquiry[.]"  12 U.S.C. § 3410(c).  The RFPA thus requires the court to deny movants' Motion for Order.  *See id.* (providing that a court "*shall deny* the motion or application" if the court finds "that there is a demonstrable reason to believe that the law enforcement inquiry is legitimate and a reasonable belief that the records sought are relevant to that inquiry" (emphasis added)).

### IV.    Conclusion

For reasons explained in this Order, the court denies movants' "Motion for Order Pursuant to Customer Challenge Provision of Right to Financial Privacy Act of 1978" (Doc. 1).

**IT IS THEREFORE ORDERED BY THE COURT THAT** movants' "Motion for Order Pursuant to Customer Challenge Provision of Right to Financial Privacy Act of 1978" (Doc. 1) is denied.

**IT IS SO ORDERED.**

**Dated this 6th day of May, 2022, at Kansas City, Kansas.**

                                                **s/ Daniel D. Crabtree**
                                                **Daniel D. Crabtree**
                                                **United States District Judge**